## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| S.B. individually and on behalf of C.B, a minor,<br><br>                  Plaintiffs,<br><br>v.<br><br>BLUE CROSS BLUE SHIELD OF ILLINOIS  and the CATHOLIC HEALTH INITIATIVES MEDICAL PLAN n/k/a COMMONSPIRIT HEALTH MEDICAL BENEFITS PLAN,<br><br>                  Defendants. | **MEMORANDUM DECISION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT**<br><br><br>Case No. 2:22-cv-336-AMA<br><br><br>Hon. Ann Marie McIff Allen |

Before the Court are the parties' respective motions for summary judgment.[1] The motions concern the denial of benefits under a self-funded employer-sponsored medical plan.  Oral argument on the motions was held on October 18, 2024.  Brian King appeared for the Plaintiff S.B.; Gwendolyn Payton appeared for Defendant Blue Cross Blue Shield of Illinois ("BCBS"); and Kara Wheatley appeared for Defendant Catholic Health Initiatives Medical Plan.  The Court, now having reviewed the summary judgment briefs submitted by the parties, the administrative record filed in this action, and having held a hearing, and for reasons discussed

---

[1]    *See* Plaintiffs' Motion for Summary Judgment ("Pl's Mot.") at ECF No. 42; Defendants' Motion for Summary Judgment ("Defs' Mot.") at ECF No. 45.

more fully below, hereby GRANTS IN PART Plaintiff's motion for summary

judgment and DENIES Defendants' motion for summary judgment.

<u>BACKGROUND</u>

This action concerns a dispute under the Employee Retirement Income

Security Act of 1974 ("ERISA") as it relates to care that Plaintiff's child, C.B,

received at RedCliff—a Utah-licensed Outdoor Youth Treatment facility—and then

at Novitas—an Idaho-licensed Children's Residential Care Facility.[2]  C.B. was a

resident and received treatment at RedCliff from June 22, 2019, to October 29,

2019.  C.B. then was in residence care at Novitas from October 29, 2019, to October

17, 2020.

During the period when C.B. was receiving care at RedCliff and Novitas, C.B.

was a beneficiary in, and Plaintiff S.B. was a member/participant in, the Catholic

Health Initiatives Medical Plan (the "Plan").[3]  Plaintiff sought coverage under the

Plan for C.B.'s care at RedCliff and Novitas for his diagnosis of "ADHD, a learning

---

[2]    In their motion for summary judgment, Defendants argue that Novitas was a
"specialized boarding school." (*See* Defs' Mot., ECF 45, at 7.)  They do so in reliance upon a
description contained in a newspaper article written in 2022. (*See* ECF No. 45-1 at Ex. 2.)
Needless to say, that single description does not trump Novitas' actual licensed status.
Note that when the court cites to specific pages within an ECF document, the page citation
is to the ECF pagination.

[3]    Two versions of the Plan are at issue here:  one effective January 1, 2019, and the
other effective January 1, 2020.  During the period when C.B. was receiving treatment at
RedCliff the 2019 version of the Plan was effective. And during the period C.B. received
treatment at Novitas both the 2019 and 2020 versions of the Plan were effective.  The
parties have not argued that these versions are different, and the court has not identified
any substantive difference between them that would be relevant in resolving the motions.
For ease of reference, the court will cite to the 2020 version of the Plan, which is found at
AR 0001-00140.  Note that the Defendants filed the administrative record under seal at
ECF No. 44.  For ease of identification, the court will refer to the Bates-numbered
documents in the administrative record as follows:  "AR _____."

disability, unspecified anxiety and depressive disorder, and an unspecified disruptive behavior disorder."[4]  BCBS, identified as the Claims Administrator under the Plan, denied all coverage for C.B.'s care at RedCliff (approx. $153,600). BCBS also initially denied all coverage for C.B.'s care at Novitas but later provided some partial coverage for certain treatments while continuing to deny all room and board claims (approx. $72,800).

In his motion for summary judgment, Plaintiff argues that a review of these denial letters establishes that Defendants have violated ERISA.  More specifically, Plaintiff notes that the Tenth Circuit has held that a plan administrator's denial is arbitrary and capricious under ERISA if it:  (1) fails to specifically explain their reasons for denying a claim in detail, including by referencing the specific provisions of the plan the administrator is relying upon and explaining why they justify denying the claim; or (2) does not specifically address and engage with the arguments presented by the claimant in favor of coverage.[5]

Although Plaintiff acknowledges that some of BCBS's denial letters cited to provisions of the Plan, he claims that none of the letters explained how those cited provision justified denying the claims.  Plaintiff also asserts that BCBS did not respond to Plaintiff's submissions that the claims at RedCliff should be covered. More specifically, Plaintiff notes that he informed BCBS that RedCliff met the

---

[4]    (*See* Pl's Mot., ECF No. 42, at 2.)

[5]    (*See id.* at 11 (citing *David P. v. United Healthcare Ins. Co.*, 77 F.4th 1293, 1309–12 (10th Cir. 2023), and *D. K. v. United Behavioral Health*, 67 F.4th 1224, 1241–43 (10th Cir. 2023), among others).)

definition of a "Provider" under the Plan, that RedCliff was duly licensed as required under the Plan, and that it provided covered services within the scope of its license. Plaintiff argues that because BCBS never addressed or engaged with Plaintiff's arguments, but merely reasserted its same denial rationale without any additional explanations, it acted arbitrarily and capriciously.[6]

Plaintiff also asserts that BCBS's denials concerning C.B.'s treatment at Novitas violate ERISA for essentially the same reasons. While BCBS's Novitas denial letters identified some Plan provisions, none of the cited provisions contain the 24-hour nursing and "md access" requirements that BCBS relied upon to initially deny the Novitas claims. Nor did the denial letters address or engage with Plaintiff's contention that C.B.'s treatment should have been covered under the Plan.[7]

Defendants, on the other hand, assert that BCBS adequately explained in the denial letters why the Plan did not cover C.B.'s treatment at RedCliff "because the Plan excludes wilderness programs," and adequately explained that the Plan did not cover treatment at RedCliff or Novitas because neither facility met the Plan's definition of "Residential Treatment Facilities."[8]

---

[6]    *See id.* at 11–12.

[7]    *See id.* at 13–14.

[8]    *See* Defs' Opp., ECF No. 48, at 3–4.

<u>LEGAL STANDARDS</u>

Summary judgment may issue when a party is "entitled to judgment as a matter of law." *See* FED R. CIV. P. 56 (a). Where, as here, both parties have moved for summary judgment in a case concerning ERISA benefits, "summary judgment is merely a vehicle for deciding the case; the factual determination of eligibility for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor." *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010) (cleaned up).

A threshold issue in an ERISA denial of benefits action is the determination of the standard of review to be applied. In ERISA actions there are two standards of review: a *de novo* standard, which is the default standard to be applied; or the arbitrary and capricious standard,[9] which is to be applied if the plan at issue confers upon the plan administrator the discretionary authority to determine benefit eligibility. *See Foster v. PPG Indus., Inc.*, 693 F.3d 1226, 1231 (10th Cir. 2012). The burden to establish that the court's review should proceed under the arbitrary and capricious standard "falls upon the plan administrator." *See Hodges v. Life Ins. Co. of N. Am.*, 920 F.3d 669, 675 (10th Cir. 2019).

---

[9] An "[a]rbitrary and capricious review of the reasonableness of a benefits decision considers if it (1) was the result of a reasoned and principled process, (2) is consistent with any prior interpretations by the plan administrator, (3) is reasonable in light of any external standards, and (4) is consistent with the purposes of the plan." *D.K.*, 67 F.4th at 1236 (quotation omitted); *see also David P.,* 77 F.4th at 1308 (asking whether the administrator's "interpretation of the plan was reasonable and made in good faith") (cleaned up).

In their summary judgment briefs and at oral argument both parties appear to accept that the arbitrary and capricious standard should apply.  Despite this agreement, it is not entirely clear that the terms of the Plan fully support this view. Although the Plan documents appear to give discretionary authority to Catholic Health as the Plan Administrator, it is not as clear that BCBS, acting as the Claim Administrator has been granted or delegated such authority.

More specifically, the applicable versions of the Plan identify Catholic Health (or its successor CommonSpirit Health) as the "Plan Administrator," while BCBS is identified as the "Claim Administrator."  (*See* AR 00114–15; *see also* AR 00122; AR 01688–89.)[10]  Under the terms of the Plan the Plan Administrator has "the exclusive right to interpret the plan and decide all matters under the Plan, including eligibility for Benefits," and also to "decide questions concerning the Plan," "determine the amount of Benefits which shall be payable to any person in accordance with any provisions of the Plan, and to provide a full and fair review to any Participant whose claim for Benefits has been denied," and "designate any other persons to carry out any duty or power which would otherwise be a responsibility of the Plan Administrator."  (AR 00114.)  The Plan further provides that the Plan Administrator "may employ the services of such person as it may

---

[10]    While the "Medical Plan Introduction" in the opening pages of both the 2019 and 2020 versions of the Plan states that the Plan "will be administered by Blue Cross Blue Shield of Illinois" (*see* AR 00007 & AR 01578), it does not identify whether BCBS serves as a "Plan" or "Claims" administrator.  As noted above, the more specific designation in the Plan identifies BCBS as only the "Claim Administrator."

deem necessary or desirable in connection with the administration of Claims ...."
(AR 00114.)

The only express delegation of authority to BCBS as the Claims Administrator found in the Plan arises in the context of a "Medical Necessity" determination.  Specifically, the Plan provides that '[t]he Claims Administrator will make the decision whether hospitalization or other health care services are Medically Necessary and whether they are eligible for payment under the terms of the Medical Plan."  (AR 0049.)[11]  However, none of the challenged denials here concerned any "Medical Necessity" determination.

Moreover, just because the Plan Administrator has discretion, does not necessarily mean that such discretion automatically passes to BCBS as the Claim Administrator.  *See A.H. v. Microsoft Corp. Welfare Plan*, No. C17-1889, 2018 WL 2684387, at *3 (W.D. Wash. June 5, 2018) (applying *de novo* review after concluding that although the plan granted administrator discretion under the plan and the administrator also had the power to delegate its discretion there was nothing

---

[11]     BCBS did not cite this provision in support of its standard of review arguments. Instead, both BCBS and Plaintiff cited to materials that were not filed with the court. For example, in his summary judgment motion, Plaintiff cited to AR 04769 as support for the position that BCBS has been granted discretion and that the court's review should be under the arbitrary and capricious standard.  (*See* Pl's Mot., ECF No. 42, at 10  & n.35.)  The administrative record filed with the court, however, only goes to page AR 03615.  The court asked Plaintiff's counsel about this reference during oral argument.  In an erratum filed October 18, 2024, Plaintiff's counsel withdrew that reference but continued to assert that "[t]he standard of review for this case is arbitrary and capricious."  (*See* ECF No. 66 at 1–2.) Similarly, BCBS cited to AR 3624—a reference also not within the record filed with the court—for the proposition that the Plan's governing document states that "[t]he Employer may enter into an agreement with an Insurance Company for the purpose of … administering certain benefits provided by the Plan."  (*See* Defs' Mot., ECF No. 45, at 16.)

presented to show that the administrator had delegated that authority to the claims administrator); *see also Hodges*, 920 F.3d at 676 (noting that although an administrator "must reserve its discretion in 'explicit terms' in the plan document. At the same time our court has been 'comparatively liberal in construing language to trigger the more deferential standard of review under ERISA.") (citations omitted).

In *Hodges v. Life Insurance Co.*, the Tenth Circuit noted that "'[i]t is essential to focus precisely on what decision is at issue, because a plan may grant the administrator discretion to make some decisions but not others.'" 920 F.3d at 677 (citation omitted). The *Hodges* court further noted that it is "'only when a plan specifically confers discretion to decide the question on which the benefit denial is based that the arbitrary and capricious standard applies.'" *Id.* (citation omitted). Thus, while it appears that BCBS may have been expressly delegated discretionary authority over decisions of "Medical Necessity," it is not as clear that the Plan explicitly granted BCBS discretionary authority over any other denial issues, such as those presented here, that do not concern a "Medical Necessity" determination.[12]

---

[12]     Before *Hodges* was decided, the Tenth Circuit hinted that an "indirect" delegation of discretion might satisfy this requirement. *See Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 630 (10th Cir. 2003). In *Gilbertson* the court noted that where the plan "expressly vests discretionary authority to determine benefits eligibility in the Plan Administrator ..., who has delegated its discretion to [a claim administrator]," the plan had "albeit indirectly" granted discretionary authority to the claim administrator whose decision "should generally be reviewed under the arbitrary and capricious standard." *Id.* In *Gilbertson*, however, the plan apparently presented evidence to the district court in the form of a declaration to establish that the plan administrator had, in turn, "delegated its authority to grant or deny disability benefits under the Plan to a third-party administrator." *See Gilbertson v. Allied Signal, Inc.*, No. CIV 99-1065, 2001 WL 37124925, at *2 (D.N.M. Sept. 28, 2001), rev'd and remanded, 328 F.3d 625 (10th Cir. 2003). Defendants here have not presented any similar evidence that such a delegation has been made but instead rely on language in the Plan

Nevertheless, because the parties appear to agree that the arbitrary and capricious standard of review should apply, and because, as discussed below, the court concludes that BCBS acted arbitrarily and capriciously, the court need not determine (at this time) whether the *de novo* standard should have instead applied.

Under an arbitrary and capricious review, the court considers whether the denial decision was the result of a reasoned process, supported by substantial evidence, and consistent with the purposes of the plan. *See D.K.*, 67 F.4th at 1235–36 (citation omitted). "The Consistent with the purposes of the plan requirement means that a plan administrator acts arbitrarily and capriciously if the administrator 'fails to consistently apply the terms of an ERISA plan' or provides 'an interpretation inconsistent with the plan's unambiguous language.'" *Id.* at 1236 (cleaned up).

Pursuant to ERISA, when a claim is denied plan administrators must provide adequate notice to any claimant whose claim has been denied and a "full and fair review" of the decision denying the claim. *See* 29 U.S.C. § 1133 (1) & (2). First, the administrator must inform the claimant in writing of the specific reasons why the

---

that states that "[t]he Plan Administrator may employ the services of such persons [*e.g.*, BCBS] as it may deem necessary or desirable in connection with the administration of Claims or other operations of the Plan" to support their position that BCBS has been delegated the discretionary authority granted to Catholic Health. (*See* Defs' Mot., ECF No. 45, at 16–17 (quoting AR 01688).) That provision certainly does not directly grant any discretionary authority to BCBS, and it remains arguable as to whether it should be construed as "indirectly" granting such discretion to BCBS.

claim was denied and do so in a manner that can be clearly understood by the claimant. *See* 29 U.S.C. § 1133(1). Next, the administrator must provide the claimant with a full and fair review of any denial, which means it must inform the claimant of the evidence it relied upon, give the claimant an opportunity to address the accuracy and reliability of the evidence, and then consider the evidence presented by both parties prior to reaching and rendering a decision. *See David P.,* 77 F.4th at 1300. As the Tenth Circuit has repeatedly noted:

> "In simple English, [what this] calls for is a meaningful dialogue between ERISA plan administrators and their beneficiaries. If benefits are denied the reason for the denial must be stated in reasonably clear language[,] if the plan administrators believe that more information is needed to make a reasoned decision, they must ask for it. There is nothing extraordinary about this: it's how civilized people communicate with each other regarding important matters."

*Gilbertson,* 328 F.3d at 635 (quoting *Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir.1997); *Rasenack ex rel. Tribolet v. AIG Life Ins. Co.*, 585 F.3d 1311, 1326 (10th Cir. 2009) (same); *see also D. K.,* 67 F.4th at 1237, 1241 (noting that the core of meaningful dialogue is that if benefits are denied and the claimant provides potential counterevidence the reviewer must respond).

In addition, in reviewing any claim brought to recover benefits due under an ERISA plan, the Court must determine whether the benefits sought are due under the terms of the plan. *See J.W. v. Bluecross Blueshield of Texas,* No. 1:21-cv-21, 2022 WL 2905657, at *2 (D. Utah July 22, 2022). "'[I]f the benefits in question do not arise under the terms of the plan, the plaintiff has no claim under this subsection.'" *Id.* (citation omitted). Thus, as applicable here, if C.B.'s treatment at

RedCliff or Novitas falls within an exclusion under the Plan, then the Plaintiff's claims for benefits were appropriately denied.

Essentially, the issue in this action is whether, consistent with ERISA, BCBS in its denial letters adequately and appropriately informed Plaintiff of the reasons why it denied the claims and adequately explained why coverage at RedCliff and Novitas was excluded under the Plan.

DISCUSSION

1. *Were BCBS's Denials of Coverage Consistent with the Plan and ERISA*

As noted above, Plaintiff received separate denials letters from BCBS concerning the claims for C.B.'s treatment at RedCliff and Novitas.  Under controlling Tenth Circuit precedent, it is only the language of these denial letters that should be reviewed to determine whether BCBS's denials of coverage were reasonable and consistent with ERISA and the Plan.  *See Ian C. v. UnitedHealthcare Ins. Co.*, 87 F.4th 1207, 1219 (10th Cir. 2023); *David P.,* 77 F.4th at 1313–14; *D. K.*, 67 F.4th at 1237, 1240–41.

First, a review of the denial letters.

   a)  *The RedCliff Denials*

In its initial Explanation of Benefits dated December 23, 2019, BCBS informed Plaintiff that his claims for benefits for C.B.'s treatment at RedCliff were denied because "[t]his service is excluded under your Health Care Plan."  (AR 01439.)  The letter generically referred Plaintiff to the Plan "for specific coverage

information and exclusions." (*Id.*) It did not identify any specific Plan provisions or exclusions to support BCBS's decision to deny benefits.

Plaintiff appealed this decision and informed BCBS that it was his view that, among other things, RedCliff met the Plan's definition of a "Provider" because RedCliff was a 24-hour 7-day per week intermediate care facility that was duly licensed by the state to provide therapeutic services to adolescents and that such a facility was not listed in the Plan as being specifically excluded from being considered a Provider. (*See* AR 00209–216.)[13]

In response, on June 16, 2020, BCBS sent a second denial letter confirming its initial denial. The second letter stated that "[t]he service billed is excluded from the member's benefits." (*See* AR 01419.) It then cryptically noted that the

---

[13]    Among other things, Plaintiff informed BCBS that under Utah law an Outdoor Youth Program—the license under which RedCliff operated—can only be licensed if the program has a "multi-disciplinary team" available to attendees that includes "a licensed physician or consulting licensed physician," and a "treatment professional who may be one of the following: (i) a licensed psychologist, (ii) a licensed clinical social worker, (iii) a licensed professional counselor, (iv) a licensed marriage and family counselor, or (v) a licensed school counselor." (*See* AR 00212–13 (citing Utah Admin. Code R501-8-6) and AR 0263 (a copy of Utah Admin. Code R501-8-6).) There is nothing in the record to establish what BCBS did to determine who was on staff at BCBS when C.B. was receiving care at RedCliff.

Further, the administrative record submitted with the motions includes BCBS's characterization that some of the care that C.B. received at RedCliff was "Individual Psychotherapy," "Group Psychotherapy," and "Family Counseling" (*see* AR 00351–52), all of which would appear to be covered treatments under the Plan. Indeed, at oral argument on the motions, BCBS's counsel acknowledged that the Plan "will pay" claims for these treatments at RedCliff. At least as asserted by BCBS's counsel, because Plaintiff had at one point sought to cancel claims related to this treatment (*see* Defs' Mot., ECF No. 45, at 11–12), BCBS continued to deny these claims even though Plaintiff sought appeal of these denials after purportedly canceling the claims. (*See id.*) As noted, BCBS's RedCliff denial letters neither discuss or analyze the care C.B. received nor do they explain how or why BCBS made its determination that C.B.'s treatment and care at RedCliff, in whole or in part, was not a covered benefit under the Plan.

"Procedure(s) [it] Reviewed" were "T2036 (Therapeutic camping, overnight, waiver, each session)," without identifying any specific reference or exclusion in the Plan. (*Id.*)  The second letter did, however, include some copied excerpts from the Plan such as the "Mental Health Services" excerpt and the definition of "Provider." (*See* AR 01420–21.)  This second letter, however, did not specifically address Plaintiff's arguments that RedCliff qualified as a Provider, and it did not explain how the cited Plan excerpts were relevant to BCBS's determination that there was no coverage.

Plaintiff again appealed and again BCBS denied the claim.   In its third and final denial dated September 16, 2020, BCBS told Plaintiff that it was upholding its denial decision because "it has been determined that additional benefits are not available for these services.  This provider is licensed as an Outdoor Therapy Program.  This type of service is not included in the plan." (*See* AR 02362.)  BCBS did not cite any specific Plan reference for this determination.  And just like the second denial, BCBS again cryptically noted that the "Procedure(s) Reviewed" were "T2036 (Therapeutic camping, overnight, waiver, each session)," and included, without explanation, certain excerpts from the Plan, including the Mental Health Services coverage excerpt and the definition of "Residential Treatment Facilities." (See AR 02362–2363.)

b) *The Novitas Denials*

BCBS's denials relating to Novitas presented Plaintiff with an even less helpful explanation.  The very first denial letter, dated January 27, 2021, recited that:

- 13 -

> "We carefully considered your request but found that residential treatment would not be eligible under the health care plan because Facility does not meet the definition of a residential treatment with confirmation of 24hr nursing presence and md access is [sic] which is required."

(AR 01519.) This letter did not reference any provisions of the Plan. Nor did it explain where (if anywhere) such a requirement could be found.

Plaintiff appealed, arguing (correctly) that the Plan does not "say that 24 hour nursing presence and md access is required" and asserting that the claims were therefore "denied in error." (*See* AR 00336–350.) Plaintiff also asserted that Novitas was duly licensed to provide care for adolescents and its services should be covered and provided documents in support. (*Id.*)

On June 11, 2021, BCBS responded in a second denial letter and upheld its initial denial. First, it noted that "Based on a review of the licensure on file, the facility does not meet the requirements of a residential treatment [sic]. Therefore, the above-referenced claims were processed correctly according to the terms and agreement of the member's policy; no further benefits are available." (*See* AR 02759.) It then tracked what BCBS had included in its earlier RedCliff denial letters by including excerpts from the Plan on "Mental Health Services" and "Providers," and noted that the Plan states that "Benefits will not be provided for halfway houses or boarding houses." (*See* AR 02759–60.)

The letter did not cite to any portion of the Plan that indicated residential treatment facilities were required to have 24-hour nursing presence and md access or even mention that requirement, which was the sole basis for BCBS's initial

denial.  (*See* AR 01519.)  Nor did BCBS include any analysis of Novitas' licensing

status and whether Novitas was in compliance with that status.[14]

---

[14]    Under Idaho law effective during the period when C.B. was receiving treatment, Novitas—licensed as a Children's Residential Care Facility—was required to have, among other things, at least one licensed social worker at the facility.  *See* Idaho Admin. Code 16.06.02.545 (2019); *see also* 16.06.02.710.06.  Moreover, Idaho law expressly excludes from its definition of a Children's Residential Care Facility any "Residential schools" or "Children's camps."  *See* Idaho Code Ann. § 39-1202 (7) (2019).  There is no requirement under these same regulations for a licensed Children's Residential Care Facility, such as Novitas, to have 24-hour nursing or "md access."

Notably, neither party has presented any record evidence, citation, or argument on the standards or requirements under this licensing scheme during the period when C.B was receiving care at Novitas.  And, as noted below, BCBS not did analyze or discuss any Idaho law requirements in any of its denial letters.  Note, however, that Idaho law also licenses "Children's Therapeutic Outdoor Programs," which it defines as "a program designed to provide behavioral, substance abuse, or mental health services to minors in an outdoor setting" *see* Idaho Code Ann. § 39-1202 (8) (2019), and which requires the program to have "multi-disciplinary staff or program consultants" available that includes "a licensed physician" and a "licensed treatment professional including either a licensed psychologist, a certified clinical social worker, marriage and family counselor, or a professional counselor." *See* Idaho Admin. Code 16.06.02.810.05 (2019).

Perhaps it is that Novitas, licensed in Idaho as a Children's Residential Care Facility rather than a Children's Therapeutic Outdoor Program, does not meet the Plan's requirements for benefits coverage.  But there is nothing in the record or in the denial letters to establish that BCBS undertook that analysis.  Although BCBS did state in its second denial letter that "[b]ased on a review of the licensure on file, the facility does not meet the requirements of a residential treatment" (*see* AR 02759), BCBS did not share with Plaintiff how it made that determination or explain why Novitas does not meet the requirements of a "Residential Treatment Facilit[y]" or a "Provider" under the Plan.

It is also worthwhile to note that in support of its summary judgment motion BCBS submitted what it identifies as an archived Novitas website that describes Novitas as providing "Medical Monitoring by a Licensed Psychiatrist" and "Individual, Group and Family Psychotherapy with experienced Doctorate & Master's Level Therapists."  (*See* ECF No. 45-1, ex. 3.)  In fact, a number of the Novitas claims submitted by Plaintiff identify care that C.B. received from Licensed Professional Counselors, Licensed Social Workers, and a Licensed Psychiatrist.  (*See* AR 00329–35.)  Other claims submissions show that C.B received "Family Counseling," "Individual Psychotherapy," and "Group Psychotherapy," while at Novitas.  (*See, e.g.*, AR 001539–40.)  And the record indicates that BCBS approved benefits coverage for much of this care.  These facts run counter to BCBS's determination that Novitas was neither a Provider nor a Residential Treatment Facility as those terms are defined under the Plan.

c) *Why the Letters Matter*

Under recent Tenth Circuit precedent, any decision to deny benefits shall be deemed arbitrary and capricious when the reviewer fails to explain how the conclusion was reached or when an administrator inappropriately relied on certain evidence while disregarding other evidence, or where the denial letter lacked reasoned analysis and relied on conclusory statements. *See David P.*, 77 F.4th at 1313-14; *D.K.*, 67 F.4th at 1237, 1240-41. Here BCBS's denial letters concerning C.B.'s treatment at RedCliff and Novitas failed to offer any reasoned analysis as to why the services C.B. received at these facilities were excluded or not covered under the Plan.

Insofar as the Novitas claims are concerned, BCBS's denial letters nowhere explained where the Plan imposes any 24-hour nursing and "md access" requirement for residential treatment. In fact, the Plan does not include any such requirement. As defined by the Plan, "Residential Treatment Facilities ... means a duly licensed facility that treats an intermediate level of substance abuse on both an inpatient and outpatient basis. It provides a detailed regimen that includes full-time residence and full-time participation by the patient within a residential treatment facility which provides room and board, evaluation and diagnosis, counseling, referral and orientation to specialized community resources." (*See* AR 00136.) There is no mention of nursing, let alone 24-hour nursing, and no mention of "md access." Because there is no such requirement, BCBS's denials regarding

Novitas on that ground were unreasonable and necessarily arbitrary and capricious.[15]

In its second denial BCBS also denied the claims on the ground that Novitas "does not meet the requirements of a residential treatment [facility]." (*See* AR 02759.) But as defined in the Plan in order to be considered a "Residential Treatment Facility," Novitas merely needed to be duly licensed (which it was) and provide "room and board, evaluation and diagnosis, counseling, referral and orientation to specialized community resources" for the treatment of an illness affecting mental health, which it apparently did. (*See* AR 0136.) In fact (and as acknowledged by BCBS's counsel at oral argument), it appears that BCBS paid for many if not all of the therapy and counseling treatments C.B. received at Novitas. (*See* AR 01539-40). That BCBS did so establishes that, at some level, BCBS, consistent with the Plan's terms, had either determined that Novitas was a "Residential Treatment Facility" under the Plan, that Novitas was a "Provider" under the Plan, or that C.B. received covered services while at Novitas.

Given that it paid for some of claims Plaintiff presented for C.B.'s treatment at Novitas, it was particularly incumbent on BCBS to fully explain in its denial letters how it came to the conclusion that Novitas did not meet the requirements for

---

[15]    This determination should come as no surprise to Defendants. Judge Nielson, who previously presided over this action, noted in an earlier ruling on Defendants' motion to dismiss that "it was not obvious that the plan actually does impose the 24-hour requirement on residential treatment care. But at the end of the day, I think that really is an argument more that the denial of benefits here may have been erroneous and contrary to the terms of the plan…." (*See* Motion Hearing and Oral Ruling, dated May 23, 2023, ECF No. 27, at 37:4–9.)

a Residential Treatment Facility—the only rationale offered in the second denial letter. As identified above, BCBS's denial letters did not do so.

In their brief Defendants also argue that coverage at Novitas was not available because "the Plan also excludes schools, camps, educational and training programs, boarding houses, or any facility not specifically mentioned as a 'Covered Service' within the SPD." (*See* Defs' Mot., ECF No. 45, at 20.) Defendants argue that "wilderness programs like RedCliff and boarding high schools like Novitas are not covered." (*See id.*) But BCBS's Novitas denial letters did not clearly assert this rationale. Moreover, the Plan nowhere mentions "wilderness programs," let alone has an express exclusion for them. And Idaho law, which duly licensed Novitas as a Children's Residential Care Facility, expressly excludes "Residential schools" or "Children's camps" from such licensure. *See* Idaho Code Ann. § 39-1202 (7). Thus, it appears that the State of Idaho may not have considered Novitas to be a boarding high school. BCBS did not engage with any of these issues in its denial letters.

BCBS's RedCliff denials were also inadequate. First, BCBS initially informed Plaintiff that the claims for C.B.'s treatment and stay at RedCliff were denied because "[t]his service is excluded under your Health Care Plan." (AR 01439.) But BCBS did not identify any specific Plan provisions or exclusions to support its decision.

Plaintiff then informed BCBS that RedCliff met the Plan's definition of a "Provider" under the Plan and that under Utah law, as an Outdoor Youth Program (the license that RedCliff operated under), RedCliff was required to have a "multi-

disciplinary team," which included licensed psychologists, licensed clinical social workers, and licensed professional counselors available to provide treatment. (*See* AR 00212–13 (citing Utah Admin. Code R501-8-6) and AR 0263 (a copy of Utah Admin. Code R501-8-6).)

Yet BCBS never addressed Plaintiff's arguments in its second denial letter and continued to deny coverage based on its view that service billed for RedCliff was "excluded from the member's benefits" without explaining why or addressing Plaintiff's arguments. (*See* AR 01419.) Nor did the denial identify any specific reference or exclusion in the Plan. (*Id*.) Although the second letter included some excerpts from the Plan, among which was the definition of "Provider," it did not specifically address Plaintiff's arguments that RedCliff qualified as a Provider or explain how the cited Plan excerpts were relevant to BCBS's determination that there was no coverage. (*See* AR 01420–21.)

Plaintiff again appealed and again BCBS denied the claim. In its third and final denial dated September 16, 2020, BCBS told Plaintiff that it was upholding its denial decision because "it has been determined that additional benefits are not available for these services. This provider is licensed as an Outdoor Therapy Program. This type of service is not included in the plan." (*See* AR 02362.) BCBS did not cite any specific Plan reference for this determination. And just like the second denial, BCBS again cryptically noted that the "Procedure(s) Reviewed" were "T2036 (Therapeutic camping, overnight, waiver, each session)," and included, without explanation, certain excerpts from the Plan, including the Mental Health

Services coverage excerpt and the definition of "Residential Treatment Facilities." (*See* AR 02362–2363.)  Again, BCBS's denial letter did not link any of these Plan provisions to its denial determination or address Plaintiff's arguments that RedCliff was an appropriate "Provider" under the Plan.  And, notably, there is no express exclusion or even a mention of "Outdoor Therapy Programs" or wilderness programs in the Plan.

Further, BCBS itself characterized some of the care that C.B. received at RedCliff as treatments that appear to be covered under the Plan.  (*See* AR 00351–52 and discussion at *supra* note 13.)   In fact, BCBS's counsel acknowledged at oral argument that the Plan "will pay" claims for these treatments.  Yet BCBS's RedCliff denial letters nowhere discuss the care C.B. actually received or explain why BCBS determined that C.B.'s treatment and care at RedCliff (which BCBS now appears to admit included some covered Mental Health Treatments) was not a covered benefit under the Plan except by conclusory reference to a Plan exclusion.

As noted above, BCBS's denials as to the RedCliff and Novitas claims were far from clear, failed to engage with the "Provider" issues raised by the Plaintiff, and failed to provide any useful detail as to why Plaintiff's claims were denied or why coverage was excluded under the Plan.  Consistent with ERISA, BCBS should have engaged with Plaintiff's proffers and in its denial letters BCBS should have fully and clearly explained why it denied his claims and determined that coverage at both facilities was excluded.  BCBS did not do so.  Under *D.K.* and *David P.*, this lack of engagement supports a determination that BCBS has acted arbitrarily and

capriciously.  *See D.K.*, 67 F.4th at 1237 (concluding that, under ERISA, a plan administrator "cannot shut [its] eyes to readily available information" that could confirm entitlement to benefits, and, if it does so, it has acted "arbitrarily and capriciously") (citation omitted); *David P.*, 77 F.4th at 1315 (concluding that claim administrators violated ERISA where they did not engage with the material submitted by plaintiff and did not explain why the treatment provided did not fall within the coverage available under the plan).

   *2.  What Mental Health Services are Covered Under the Plan*

   As noted above, the Plan states that coverage is available for "Mental Health Services," which are described as the treatment and diagnosis of an "Illness Affecting Mental Health, so long as the care is rendered by, among others, a "Physician," a "Psychologist," a "Clinical Social Worker," or a "Clinical Professional Counselor," and that "Additional counselors may also be covered when supervised by a Physician."  (*See* AR 00055.)

   The Plan, however, contains many exclusions, limitations, and definitions that purport to limit the type and scope of coverage that may otherwise have been available.  For example, in the section entitled "General Conditions of Coverage, Exclusions, and Limitations," the Plan notes that even if a service "is listed as otherwise covered … it is not eligible for Benefits if any of the following general exclusions apply."  (*See* AR 00071.)  Among the exclusions is that "services … not specifically mentioned in this [Plan]" are not covered.  (*See* AR 00073.)

   That then begs the question of what services are "mentioned" in the Plan.

As indicated above, Mental Health Services are covered if they are rendered by a "Physician," a "Psychologist," a "Clinical Social Worker," or a "Clinical Professional Counselor," and that "Additional counselors may also be covered when supervised by a Physician." Plaintiff's arguments to BCBS during the appeal process were that RedCliff and Novitas had such persons on staff and the record suggests that at least some of the care rendered to C.B. at both RedCliff and Novitas came from such persons. (*See supra* notes 13 & 14.) In fact, BCBS has acknowledged that it paid for some or all of the Mental Health Services that C.B. received at Novitas and that it "will pay" for the Mental Health Services that C.B. received at RedCliff.

There was also a residential component to C.B.'s treatment at RedCliff and Novitas. There is no doubt that the room and board he received was not "rendered" by a physician, psychologist, or social worker. It's room and board—food and a bed—not medical therapy. It is not the psychiatrist who tucks you into bed at night or cooks your breakfast.

So how does room and board get covered, if at all?

The Plan contains a "Glossary of Terms" and notes that these terms are used in various sections in the Plan and have "a specific meaning when applied to your health care coverage." (*See* AR 00119.) Among these terms is "Residential Treatment Facilities," which means:

> "a duly licensed facility that treats an intermediate level of substance abuse on both an inpatient and outpatient basis. It provides a detailed regimen that includes full-time residence and full-time participation by the patient within a residential treatment facility **which provides room and board**, evaluation

and diagnosis, counseling, referral and orientation to specialized community resources.

(AR 00136 (emphasis added).)[16]  Further, in a section of the Plan entitled, "The Details – What's Covered and Not Covered," the Plan instructs participants that "**[b]enefits will be provided for room and board charges**" at a Residential Treatment Facility "with proper prior authorization."[17]  (*See* AR 00063 (emphasis added).)  These Plan provisions appear to establish that room and board will sometimes be covered under the Plan.

The issue gets confusing, however, when the Plan definition of "Provider" is examined.  Under the Plan no services will be covered unless they are rendered by a "Provider."  (*See* AR 00133.)  A "Provider" is defined to mean "a duly licensed provider designated by the Medical Plan to render Covered Services"—i.e., Mental Health Services.  (*See id.*)  The Plan however, states that a "Provider" does not include "boarding houses; camps or schools; … halfway houses; … [or] **residential treatment centers**."  (*Id.* (emphasis added).).[18]

---

[16]    Although this express language appears to include in its definition of Residential Treatment facilities only facilities that provide "intermediate level of substance abuse" care, Defendants acknowledged at oral arguments (citing AR 0063) that definition also includes facilities that provide room and board for persons who receive mental health services or treatment at the facility.

[17]    In its denial letter BCBS did not raise the lack of prior authorization as a basis for denial of coverage.

[18]    The full definition of Provider is below:

**Provider or Professional Provider** … means a duly licensed provider designated by the Medical Plan to render Covered Services or Supplies to you as a Provider. For the services of these Providers to be covered, the service must meet the definition of Covered Services or Supplies, and the Provider must be providing the services or supplies within the scope of his or her license or certification.

Under this express exclusion, it is hard to understand how any residential treatment center or facility that provides room and board (as all do and as the Plan appears to acknowledge) can ever be deemed a "Provider" under the Plan. Yet, as noted above, the Plan itself expressly provides that room and board is sometimes a covered service.[19]

Given these contrasting provisions, it was essential that BCBS fully explain to Plaintiff the basis for its denials of coverage at RedCliff and Novitas. Neither in its briefs nor at oral arguments has BCBS indicated where in its denial letters it reasonably and clearly explained to Plaintiff, with citations to the record and the

---

Provider does not include athletic trainers; boarding houses; camps or schools; convalescent facilities, institutions for chronic care, personal care, residential or domiciliary care, or homes for the aged; dental assistants and dental hygienists; education or training programs; halfway houses; health resorts; health spas; hypnotists; homeopathic medical Providers, hotels, motels and other lodging; priests, and other religious affiliates; naturopaths; opticians; orthodontists; residential treatment centers; residents, interns, or other Employees of Hospitals or Skilled Nursing Facilities who bill for their services and are not listed as Covered Providers; rest homes; sanitariums; and other non-traditional medical Providers; transportation other than by Ambulance; and any facilities or Providers not specifically mentioned within this SPD that are not specifically designated by [Catholic Health] to be eligible providers.

(AR 00133.)

[19]    And does that issue make the "Provider" provision ambiguous? An ambiguity exists "when a plan provision is reasonably susceptible to more than one meaning, or where there is uncertainty as to the meaning of the term." *See Rasenack ex rel. Tribolet v. AIG Life Ins. Co.*, 585 F.3d 1311, 1318 (10th Cir. 2009) (quoting *Admin. Comm. of Wal–Mart Assocs. Health & Welfare Plan v. Willard*, 393 F.3d 1119, 1123 (10th Cir.2004)). If so, the cases are legion that if a plan provision is deemed ambiguous, the doctrine of *contra proferentum* is applied and all ambiguities are decided against the Plan. *See Rasenack*, 585 F.3d at 1318; *Carlile v. Reliance Standard Ins. Co.*, 385 F. Supp. 3d 1180, 1186 (D. Utah 2019); *see also M.A. v. United Healthcare Ins.*, No. 1:21-cv-0083, 2023 WL 6318091, at *5 (D. Utah Sept. 28, 2023) (finding provision ambiguous where administrator covered claim from one facility but not another similar facility under the same plan provision). Because no party has raised this issue the court need not address it at this time.

Plan, why coverage for C.B.'s treatments and room and board at RedCliff and coverage for C.B.'s room and board at Novitas, should be excluded because neither facility was considered a "Provider" or failed to meet the Plan's definition of a Residential Treatment Facility.  Moreover, BCBS' failure to do so highlights that its application of the exclusions to RedCliff and Novitas do not appear to be supported by substantial evidence.

The law in this circuit is that where, as here, a denial of coverage is based on some exclusion, BCBS, acting as Claim Administrator, bears "the **burden of showing that a loss falls within an exclusionary clause of the policy**." *Pitman v. Blue Cross & Blue Shield of Oklahoma*, 217 F.3d 1291, 1298 (10th Cir. 2000) (citing cases); *see David P.*, 77 F.4th at 1315 (concluding that claim administrators violated ERISA where they did not engage with the material submitted by plaintiff and did not explain why the treatment provided did not fall within the coverage available under the plan); *see also C.P. v. United Healthcare Ins. Co,*, 679 F.Supp.3d 1184, 1191–92 (D. Utah 2023) (noting administrator had "the burden of demonstrating the evidence to deny and exclude the claim" and, citing *D.K.*, finding that administrator's actions were "arbitrary and capricious" when it failed to address evidence that facility was duly licensed and did not respond to plaintiff's proffers on that issue).  BCBS did not do so.

*3.  Did BCBS Act Arbitrarily and Capriciously*

Under recent Tenth Circuit precedent, a decision to deny benefits shall be deemed arbitrary and capricious when the reviewer fails to explain how the

conclusion was reached or when an administrator inappropriately relied on certain evidence while disregarding other evidence, or where the denial letter lacked reasoned analysis and relied on conclusory statements. *See David P.*, 77 F.4th at 1213-14; *D.K.,* 67 F.4th at 1237, 1240-41.[20]  Here, BCBS's denials fail on all those points.

BCBS should have engaged with the information and arguments Plaintiff submitted on this issue in determining whether C.B.'s treatment and care at RedCliff and Novitas were covered or fell within Plan exclusions.  BCBS did not do so.  As noted above, none of BCBS's denials even mentions, yet alone engages with, Plaintiff's arguments.  Nor did its denial letters clearly explain how it reached its decisions, how it assessed Plaintiff's evidence on whether RedCliff and Novitas were "Providers" under the Plan, or any reasoned analysis for its unexplained conclusions.  Under *D.K.* and *David P.* this lack of engagement supports a determination that BCBS has acted arbitrarily and capriciously.  *See D.K.*, 67 F.4th at 1237 (concluding that, under ERISA, a plan administrator "cannot shut [its] eyes to readily available information" that could confirm entitlement to benefits, and, if it does so, it has acted "arbitrarily and capriciously") (cleaned up); *David P.*, 77 F.4th at 1315 (concluding that claim administrators violated ERISA where they did

---

[20]    Although *D.K.* and *David P.* addressed the requirement for a meaningful dialogue under ERISA in the context of a determination of medical necessity under a plan, the rationale behind these opinions applies equally to all types of denial determinations. *See, e.g., C.P.*, 679 F.Supp.3d at 1188–93 (applying *D.K* and the underlying district court decision in *David P.* to an administrator's denial based on an incorrect determination that a licensed residential treatment facility was not licensed).

not engage with the material submitted by plaintiff and did not explain why the treatment provided did not fall within the coverage available under the plan).

A similar conclusion was reached by Judge Barlow in *Harvey T. v. Aetna Life Ins. Co.*, 508 F. Supp. 3d 1088 (D. Utah 2020). In that case, as here, even though the record indicated that the child received mental health treatments at the facility that might be covered under the plan, the administrator denied all claims based upon its conclusory and categorical finding that an exclusion applied because, in its view, the facility was a "boarding school." *Id*. at 1100. In finding that the administrator acted arbitrarily and capriciously, the court noted that, among other things, the administrator "made no findings about the nature of services" at the facility and no finding as to whether the services at the facility were performed by a "provider" under the plan. *Id*.

Accordingly, as to the Plaintiff's claims for coverage for C.B. at RedCliff and Novitas, BCBS's motion for summary judgment must be denied. And because BCBS has not articulated any sufficient or reasoned analysis as to why Plaintiff's claims should be excluded under the Plan, the Plaintiff's motion for summary judgment is granted in part. S*ee C.P.*, 679 F.Supp.3d at 1191 (noting that administrator had the obligation and "the burden of demonstrating the evidence to deny and exclude the claim").

### 4. What is the Appropriate Remedy

Upon a finding that BCBS acted arbitrarily and capriciously two remedies are available: remand or an award of benefits. Under Tenth Circuit precedent

remand is the default unless the court determines that the record clearly shows that the plaintiff is entitled to benefits. *See David P.*, 77 F4th at 1315–16.

But that default usually arises in the context of a denial based upon medical necessity—an issue not presented here. The question then is whether remand is still an appropriate remedy?[21] Plaintiff says it is not, noting that the Tenth Circuit has indicated that administrators should not get a second bite at the apple to come up with a new rationale to deny claims. Defendants, of course, argue otherwise claiming that remand is "the only relief that the Court could grant." (*See* ECF No. 48, at 15.)

Because the court concludes that the record here does not show that Plaintiff is clearly entitled to coverage under the Plan,[22] the court is not in a position to award coverage benefits. Thus, remand is the appropriate remedy. *See David P.*, 77 F.4th at 1315; *see also C.P.*, 679 F.Supp.3d at 1192.

Of course, on remand BCBS may not rely on any new rationales to deny Plaintiff's claims, but is instead limited to clearly explaining, consistent with the

---

[21] Judge Parrish has noted the Tenth Circuit's lack of clear guidance on this issue. *See M.A.*, 2023 WL 6318091, at *10 n.3 (noting that additional guidance would be helpful to determine when the court should award benefits or remand).

[22] It appears that, as noted previously, some or all of the mental health treatments C.B. received at RedCliff (and also perhaps some treatments he received at Novitas that have not yet been covered) were rendered by a physician, psychologist, clinical social worker, or clinical professional counselor as those terms are defined by the Plan, so that they should be covered. Indeed, BCBS's counsel has acknowledged that BCBS will pay such claims if they are again presented to it. But Plaintiff has not identified, with any precision or citation to any record materials, the specific claims that should have been covered under the Plan or presented any detailed argument on which treatments should be covered. Further, because the issue of room and board coverage remains unsettled the court is unable to determine Plaintiff's clear entitlement to coverage on those claims.

Plan, ERISA, and this court's Decision and Order, why RedCliff and Novitas do not fall within the Plan's definition of a "Provider" and why the exclusions cryptically referenced in its denial letters apply.[23]  In addition, consistent with *D.K.* and *David P.*, BCBS must also meaningfully engage with any counter evidence presented by the Plaintiff.

     *5. Other Relief*

     In his complaint, Plaintiff also sought relief in the form of an award of attorneys' fees and costs pursuant to 29 U.S.C. §1132(g).  (*See* ECF No. 2 at 18.)  So long as an ERISA plaintiff "has achieved 'some degree of success on the merits," the court has discretion to make an award of reasonable fees and costs.  *See Cardoza v. United of Omaha Life Ins. Co.*, 708 F.3d 1196, 1207 (10th Cir. 2013) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 244 (2010)).  Whether such an award is warranted here has not been raised in the motions now before the court.

     Should Plaintiff wish to pursue such relief at this time, he is directed file a motion for fees and costs, along with a memorandum of law explaining why a remand order here amounts to a degree of success on the merits, and why the factors the court should consider in determining whether an award should issue

---

[23]    *See David P.*, 77 F.4th at 1316 (noting that remand "does not provide the plan administrator the opportunity to reevaluate a claim based on a rationale not raised in the administrative record") (cleaned up); *see also Spradley v. Owners-Illinois Hourly Emps. Welfare Ben. Plan*, 686 F.3d 1135, 1140–41 (10th Cir. 2012) ("[W]e will not permit ERISA claimants denied the timely and specific explanation to which the law entitles them to be sandbagged by after-the-fact plan interpretations devised for purposes of litigation.") (citation omitted).

have been satisfied.[24]   Plaintiff must also include a declaration sufficient to establish a calculation of the requested fees and costs.  Plaintiff's motion, if any, is to be filed within 30 days of this court's Decision and Order.  Defendants will have 30 days from the date Plaintiff's motion is filed to submit their response or opposition.  The court will then inform the parties if any further briefing or a hearing is necessary.

<u>CONCLUSION</u>

Accordingly, based on the foregoing,

IT IS ORDERED that Defendants' motion for summary judgment [ECF No. 45] is DENIED; and

IT IS FURTHER ORDERED that Plaintiff's motion for summary judgment [ECF No. 42] is GRANTED IN PART and DENIED IN PART; and

IT IS FURTHER ORDERED that this matter is REMANDED to Defendants for further consideration consistent with this Decision and Order.

DATED this 29th day of January 2025.        BY THE COURT:

Hon. Ann Marie McIff Allen
United States District Judge

---

[24]    The Tenth Circuit has identified five factors the court should consider in deciding whether to award attorney's fees and costs:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of fees; (3) whether an award of fees would deter others from acting under similar circumstances; (4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Cardoza*, 708 F.3d at 1207.